We will take it under advisement and call our last case of the morning. United States v. Donald Turner. May it please the court. My name is Elisa Long, an assistant federal public defender, and I represent Donald Turner. I'd like to reserve three minutes for rebuttal. I'd like to start first with the last issue in the brief, the restitution issue, just to make a few points. In this issue, we're asking that the court reverse the district court's imposition of an award of restitution under the discretionary restitution statute. The government has conceded that the court did not make the required findings prior to imposing that discretionary award of restitution, and for that reason alone, this case should be remanded for the making of those findings. Well, except if the mandatory victim restitution act applies, why would we send it back for the court to make findings under the law that doesn't apply? There are two reasons, both procedural and substantive. First, procedurally, the district court in this case did make a finding that the mandatory restitution statute did not apply, that this was not a mandatory restitution case. So what the government is asking now, for the first time on appeal, is that this court reverse the district court. Isn't that a question of law? It's a question of law, not a finding of fact, right? Well, it's a finding that the district court made that the government did not challenge to recross appeal that if this court were to essentially substitute a mandatory restitution finding for the discretionary, that does in fact lessen Mr. Turner's rights and enlarge the rights of the government. To the extent that Mr. Turner no longer has the opportunity for the judge in this case to find that he does not have the ability to pay under the discretionary restitution statute. But if it's mandatory, how does the ability to pay make any difference? I'm talking about the procedural portion of it. I understand what you're saying. Let me go to the substantive because I think it will make more sense. This is not a property offense. This is not an offense against property. The mandatory victim restitution act applies. That's a matter of law also. We haven't decided that yet, but other circuits have. Well, other circuits actually, the only case that is relied upon by the government that is on point is the Meredith case out of the Ninth Circuit. And there's no analysis in that case. The only analysis is one sentence, and it says, because this is a conspiracy for a Title 26 tax offense, and we're going to find that the mandatory restitution applies. Okay. So is this correct? It's not correct because this is still not a property. This is a conspiracy. It's a conspiracy, but it's not an offense against property. The taxes that were unpaid were never the property of the United States, never within the United States control, ownership, dominion, that then were taken. All right. Bottom line is we have to decide that question. Yes. Okay. And we're capable of doing that because it's a question of law. We may decide in your favor, but there's nothing to say that we can't determine that. Well, it's a claim of error that was not raised by Mr. Turner. Mr. Turner challenged that the restitution imposed error. Everybody's agreeing, and you raised it, that it's error. So the error is in front of us, and as a purely procedural question, if it's a question of law, which of those acts of law? We're in as good a position to decide that as the district court. Why would we send it back? Isn't that a waste of judicial resources, and shouldn't we decide it if it's a question of law? Because I don't think that the court, if the government didn't challenge it in a cross appeal, that it is properly before this court for this court to adjudicate. I put the issue of what the district court did here, which was to impose a discretionary order of restitution. So the issue is exactly before us of whether the Victim Witness Act applies. And in response to that, the government has said, no, it doesn't. This is the act that applies. I guess I'm having a little bit of trouble. So your assertion is no cross appeal? It's waived? I think there's case law both from the United States Supreme Court, Morley Construction Company versus Maryland Casualty Company, and then also this court's decision in Nationwide Mutual Insurance versus Cosenza that says that in the absence of a cross appeal, the appellate court cannot modify the judgment of the district court to enlarge the rights of the government. We wouldn't be doing that. You would be. The issue that's before us is whether or not Mr. Turner should be obligated to pay $400,000 in restitution. That's the issue. You filed an appeal on that question. You said he should not be entitled to it because there was no finding of his capability to pay. Government says, yes, but even though we didn't raise it below, he's obligated to pay it under the Mandatory Victim Witness Act. We have to decide that question. I don't see why it's not before us. You brought it up. It would be different if you hadn't raised restitution on appeal. Right. And then they appear before us and say, oh, by the way. But once you raise it, the issue's there. And what else? I mean, we have a recent case, Tri-M Group, where we've talked about waiver and said, you know, where there's a need for a factual record, you know, maybe we will find that waiver really is preclusive. But here, if we were to do what you say, we would be doing what I said originally. We'd be saying, oh, okay, we won't consider that legal issue. We'll, you know, as to whether it's mandatory, we'll send it back for a finding on restitution that doesn't apply. I mean, we have to look at the law since you presented the issue. Right. I think what my point is that I think substantively, even if the court were to do that, were to consider this issue in the government's argument, that we should prevail as a substantive matter. Procedurally, I understand the court to say, but I think the law is clear, the Supreme Court law and the law from the circuit, that where the issue is not properly presented, where it in fact the resolution would result in the diminishment of Mr. Turner's rights. And I understand the court's position on that. But I want to just, the substantive issue is important here because the case that the court relies, that the government relies upon, this narrative case out of the Ninth Circuit, there's one sentence of analysis and there's a citation to one case. That case is not a conspiracy to commit tax offense. It's not restitution that is ordered in a client conspiracy case or in a tax case at all. The case that is relied upon by the Ninth Circuit and Meredith, the only case is a bankruptcy fraud case where restitution is ordered to creditors under the Mandatory Victim Restitution Act. And in that case, this is where the procedural and substantive issues dovetail, the government cross-appealed. The government said, this is a mandatory restitution case and you need to impose restitution under that statute. And that court ultimately agreed, not because it was a tax offense, conspiracy to commit tax offense, because it was a bankruptcy case where the identified victim were creditors who had lent money to a debtor and the debtor had hidden assets so as not to have to repay. So it was clearly a property offense in the way that this case, Mr. Turner's case, is not. Can I get you to turn to the question of the residual hearsay exception? Yes. Do I understand correctly that your argument, in effect, concedes three out of the four points of the applicability of Rule 807 and the real issue that you've got is with whether these bank records are a statement of equivalent guarantees of trustworthiness? I don't want to suggest that we're conceding. I think our strongest point is that they are not equivalent guarantees. Or any of the others? Well, we've talked about the corroboration here, whether or not these documents are properly corroborated. And the reason that's significant, it goes to whether or not the government needs to introduce these documents through the residual hearsay exception. Let me ask you this just to make sure I understand what is before us and what isn't, okay? Because I understood you to not be making an argument about material fact. There's not a question whether this is about material fact, right? That's correct. And I didn't understand you to be making an argument that there was – I didn't understand you to be contesting that these records weren't the most probative of the point the government was trying to make. That wasn't an issue you had raised. Is that correct? Well, it is an issue to the extent that it ties in with the circumstantial guarantees of trustworthiness. Okay. So we're going back to that point. So your argument is 807 doesn't apply because there aren't circumstantial guarantees of trustworthiness. In essence, yes. Okay. Thanks. So if that's the point that you're going after, talk to me, if you would, about what's lacking if you've got documents which are held by the person who has got the most interest in knowing what's accurate or not about their bank account. What's lacking in a guarantee of trustworthiness in first inherently in the document and then in the circumstances surrounding the seizure here? Okay. I think inherently in the documents, and we have established exceptions obviously to hearsay rule, and one of the things that this Court can look at is even though this doesn't fit exactly within the business records exception, what are the reasons why we allow business records in without the person who created the record getting on the stand and testifying? And those are things like we know that the records were made in the ordinary course of business, that this is how the records were made and they're kept in the ordinary course of business. We don't know anything about the person who created the records here and the IRS agent through whom the records were admitted didn't know anything about. But don't we look at the records themselves? We can. And wouldn't there be some speculation on your part as part of the record or some proof that these types of documents are regularly forged or made up? I mean, they look like, smell like, seem like, and the local documents, the documents that were authenticated, they seem to tie in with them. What is it about them that lacks the trustworthiness? Well, because these are documents that were made in jurisdictions where there's secrecy laws. We don't really know how they're made. They won't produce the documents to the government or to anyone pursuant to a subpoena. Precisely. So isn't the theory that you're arguing for one in which people are actually rewarded not just with substantive benefits but with evidentiary benefits if they secrete their assets overseas? Because by your theory, you can never get those bank records into evidence. Well, you could if you had. They had domestic bank records that corroborated some of these transactions. So they could have gotten and did get into evidence the domestic bank records. Sure, but the whole point of the transactions as alleged by the government and proved to the satisfaction of the jury beyond a reasonable doubt was that these transactions were taking place overseas. The whole move your stuff offshore and move it around banks that are offshore, and if you do that, you'll avoid millions of dollars in taxes. And it sounds like the theory you're propounding is one in which the federal government is never able to prove a case against people like that because you can't ever satisfactorily overcome hearsay objection to those kinds of records. I think there are other ways to get in the information. I mean, I think the question here that the court has to decide is whether these were exceptional, whether this was the type of exception that should be rarely used. But there were extraordinary guarantees of trustworthiness here. And although I understand the necessity, what you're saying is that the government needed the records, right? I'm not saying anything. I'm asking you to respond to what I understand to be the position being taken by the government that this is the most probative evidence we could have on this point, and there really isn't any other way to get it. And you should be satisfied with the document, the inherent quality of the documents as being, hey, these are documents that banks issue, and he acted on them. I'm trying to get you to respond to that. Well, I think if you look at the documents themselves, they're not a number of monthly statements that are in consecutive order that have the indicia of the bank for all of these different months. They're select documents that are handwritten on top of the documents that are partially covered by Post-it notes that are incomplete. And so we really don't have sort of a full accounting of what happened in these different accounts, even if we were to believe that these were records produced by the bank. So do they have the same guarantees of trustworthiness that a dying declaration has or that a statement against interest has? And they just don't. The government didn't have enough. Well, what's your best case that something like that is required? In fact, I was somewhat surprised that the case law in this area seems pretty lenient. Although in the other cases, I mean, as long as you put on notice that they're going to assert this, you kind of have the opportunity then to poke at them and say, no, these aren't trustworthy because X, Y, Z. What's your best case? I think United States v. Palulu, which is a Third Circuit case from 1992, and it's cited in the brief. And there the court reversed for improper admission of the bank records. Yeah, but there was no notice. I mean, there was a – they didn't apply. Part of it was they didn't give proper notice. Right. But also the court looked at whether or not and discussed that the residual hearsay exception should not be used to eviscerate the business records. All right. Absolutely. All right. Do you want to spend two minutes on the conversations, on the admission of the libido conversations with Gonzalez? Yes, Your Honor. Because I don't want it to be that we ask you questions and rebuttal you haven't. I think here, I think the brief is clear that there is no independent, uncharged conspiracy here. There just isn't evidence of that here. What we have is agreements, a documented agreement between Mr. Turner and Mr. Libido to sell the book, that that is not illegal activity, that is not a conspiracy to sell the book. Let me ask you this on your argument. Under 801D2E, can, because I can't find a case that we say it, can the testimony that you're objecting to be used to establish a conspiracy without other evidence of the existence of this broader conspiracy? No, and that's in the rule itself. The rule itself says that you can look to the content of what you're trying to admit, but that cannot be the exclusive basis for establishing a conspiracy. And that's exactly, I think, what the government has argued here, is that most of their argument is based upon the recorded conversations themselves. Okay. Are you saying that there's no other evidence of the broader conspiracy? No. And the only purported evidence that the government... No you're not or no? I'm saying there is no other evidence. I'm saying, well, first, let me just be clear, I'm saying that the recorded conversations don't establish that there's a conspiracy in the first instance. Okay. Secondly, I'm saying there is nothing outside of those recorded conversations to show a conspiracy to recruit people to become members of... If we found that there was, would the evidence you're objecting to therefore be admissible? If you found that there was an uncharged... If we found that there was other evidence of a conspiracy, would that defeat your argument? Well, you'd also have to find that these conversations were made in furtherance of that conspiracy. Yes. Yes, that's correct. Okay. And there was no relevance objection lodged generally to these conversations? No, Your Honor. Okay. I'd like to reserve the rest of the time for rebuttal. All right. Thank you. Mr. Davis. May it please the Court, Gregory Davis for the United States. Mr. Davis, would you mind starting at the last point? Start with restitution. Quite happy to. No, no. The last point. The last point that she covered. Certainly. What other evidence is there in the record of this broader conspiracy which allows you to admit the conversations between the alleged co-conspirator Lovato and the IRS agent? Well, there are a variety, but let me point to three in particular, three items in particular. First, Mr. Lovato submitted Agent Rivera's name to the defendant to join the defendant's organization. Two, Mr. Lovato encouraged Agent Rivera to participate in the meetings of the organization. And three, which I think is perhaps the most damning, Mr. Lovato told the undercover agent that Mr. Lovato had participated in, along with the defendant and two of the people to whom Mr. Lovato had sold the trust package, in developing the correct entities and programs to implement their scheme. I think that's at page, I think we discussed that at page 14 of our brief. I could be wrong. But also I want to emphasize that the standard review for this Court is clear error. The Court has to determine whether the district court erred by finding by a preponderance of the doubt. It's a very high standard for the defendant to overcome, and I think here the district court made clear that it had listened to all the transcript, the recordings, it read the transcripts. There was enough there to evidence the existence of a separate, uncharged conspiracy. Now, the defendant makes much of the fact that his office manager and the IRS case agent weren't aware of this agreement, but one of the points of the conspiracy is to keep it secret. And the defendant made clear how important secrecy was by saying, don't keep records for more than three months, pay me in cash. In order to contact me after you buy this book, you have to have the specific number of the book before I'll talk to you. So secrecy was very important. And so the fact that the Levitos office manager, who was involved in some of the receiving calls, didn't know about this separate conspiracy really doesn't tell him. The conspiracy that was charged, that Turner was convicted of, was a conspiracy with the Levitos, correct? Correct. Okay. Right. I'd like to have you respond to Ms. Long's assertion that the only reason that conversations went on with Mr. Gonzales after he purchased the book was because Mr. Gonzales kept pushing it and pushing it and pushing it, that there was really nothing going on here but book sales. What's wrong with the defense argument that whatever evidence you've got here was created by the government's pressing forward after the sale of the book? Certainly Mr. Levitos could have said, I have nothing to do with any of that, contact the defendant directly, and ended the conversation. He didn't do that. He carried on several long at length conversations about sort of responding to questions that the undercover agent had. And telling the undercover agent, as I mentioned before, that I was involved in the sales of a couple of others to a couple of other friends, and I was involved along with the defendant in setting up the, deciding what is proper to sort of implement the scheme. What to do in terms of how to make it work for the people to whom it was sold. Was there any limiting instruction as to how the jury should consider this In other words, if it had to do with a different conspiracy, was it necessarily harmless? The jury hears all this stuff and then they say, well, Levitos, he's really in on this and they're really in cahoots, et cetera, et cetera. I guess I'm asking about, I guess I'm basically asking about harmlessness, if we find it shouldn't have been admitted. Well, I think obviously our stronger argument is that it should have been admitted, it was properly admitted. To the extent that there was some overlap in the conversations between defendant and the undercover agent that provides some of the same material that is in the undercover tapes. Obviously it's not going to be a total overlap, but there's enough overlap that I think we could argue that it's harmless. Really? Two hours' worth of conversations? Wasn't it like two hours' worth of undercover conversations? That's a lot of time to be putting, a lot of conversation to be putting in front of the jury and then saying, yeah, well, you could just ignore that. As I said. That really didn't have anything to do with the proof. As I said, I think our stronger argument is that the district court did not commit clear error by admitting the testimony. Why should we not hold that you have waived the restitution argument, mandatory restitution, and say, listen, you had one shot at the apple, you didn't cross appeal. You're foreclosed. I think, as you pointed out, the court's going to have to resolve the question. The question of restitution is clearly before the court. We can argue, and we do argue, that there was a sufficient basis in the record. Now, the government did not argue that the MVRA, section 3663A, C1A2i, applied, but it was clear from the record that this was a Title 18 offense. Did the court make an absolute finding that it did not apply? I don't think anyone, if I remember correctly, I scanned the transcript again this morning, I think basically the government presented it as an MV, as a voluntary witness, voluntary victim and witness protection act question. But I think counsel said, I think counsel said the court said it didn't apply, that mandatory did not apply. I don't recall, but I would not be surprised if the court went, given that the parties were arguing that it was the voluntary act, certainly we did not argue below that it was the. To my mind, that would make it easier for us to address it on appeal if the court determined that it didn't apply. I understand. I simply don't remember the transcript that well. How are we to know, can you make a representation, is there anything in front of us that tells us that if the MVRA applies instead of the VWPA, that the calculation one would reach on restitution would be precisely the same? I'm not sure, in terms of the total dollar amount? Yeah, in terms of the amount that's being demanded for payment. In other words, the assertion of the government seems to be, look, the mandatory act is the one that applies and so what if the judge said the wrong act, since the mandatory act applies, just apply it. But that takes a jump over the question of, if you're applying the voluntary as opposed to the mandatory act, do you come out at the same place at the end in terms of what's owed? I haven't heard the defense argue, and maybe I just haven't tuned into it carefully enough, that there would be a difference. I have not seen... I'm asking you. Is restitution different under the... How do we know, except for that both sides here are treating it like it's maybe the same? I don't believe, I mean, I think the restitution, I think, would be the same under both statutes. I can't cite the case off the top of my head, but I think basically the two statutes have the same purpose, which is to make the victim whole. Sure, but my question is a very practical one. I understand. Assuming we agreed with you that the mandatory act applied, would we then be in a position to say, harmless error, victim witness doesn't apply, mandatory does, but the ruling on restitution should stand? Or at that point, would we be obligated to say, you know what, there was error here, the mandatory act applies, we're sending it back for a determination of whether there's any difference, or should we be asking for something in addition from you people to tell us as a matter of law it comes out the same? I mean, this comes to us, frankly, the cake is half baked. What are we supposed to do with it? Certainly, I'm sure that my cousin counsel wouldn't object if we both were to present the court with any findings, anything that we can find directly on point in terms of whether there's a difference in restitution calculations under the MVRA and the VWPA. It's not something that I was prepared to address. I didn't read anything in the briefs. If it's less, she's waived it. If it's more, you've waived it. No, I'm just kidding. Just as my understanding of the acts is that you're attempting to make the victim whole. I find it difficult to believe that there would be a difference in how the government is whole, whether you apply the VWPA or the MVRA. Whole is whole. Whole is whole? Yeah, well, I'd be inclined to agree with the logic, but I'd really like to know what the law is saying. I certainly understand. Would you like to address the bank records because your time is... Well, just before I do that, just a couple of things on the restitution. Tax dollars are government property just as much as the assets that the government purchases with those tax dollars. And I don't think anyone disagrees that hard assets, I mean, the Eighth Circuit in U.S. v. Santee Haugen, 449, Fed 3rd, 862, has made it clear that the IRS is an eligible victim under the MVRA. Now, that was a case involving 18 U.S.C. 286 and 287, false claims, but still the IRS is qualified as a victim. Now, this court, I looked this morning in terms of 18 U.S.C. 371. I found seven cases in which this court has addressed whether or not a 371 count might qualify under the Mandatory Victim Restitution Act. Now, four of them are unpublished. They mostly deal with bank fraud. One involves whether or not someone is deportable for an aggravated felony. You've been there already today. We won't go back. One involves the difference in the statute between the government of the Virgin Islands and basically saying that there's no equivalent with what we have in the federal system. And then there's a fourth case which basically just generally talked about property. But in terms of defining what qualifies as property, I'm not aware of anything that deals with, other than there is the Ninth Circuit case that we cite in our briefs and that opposing counsel has commented on. But you would say that bank fraud probably is parallel? We certainly argue it's very similar. I mean, it's essentially money. It's pretty much the same thing. Bank fraud is actually taking the money. Here is refusing to pay the money. But it's money to which we have a right, which is ours. And I will take the hint and move on to the bank records. First, I want to emphasize that, as this Court explained in U.S. v. Wright, the district court's determination of whether or not these is a very fact-specific finding, and it's only reversible for clear error. And again, certainly. Can I ask you something real quick? A little bit of a conundrum for me. The Supreme Court seems to say that when you are deciding on trustworthiness, there's a confrontation clause aspect to it. And when you're trying to satisfy that, you've got to be looking for inherent trustworthiness. That is, something inherent to the evidence. Case law under 807 talks about circumstantial guarantees of trustworthiness. That is, what are the circumstances surrounding it? To satisfy both the 807 issues about circumstantial guarantees and the confrontation clause aspect of it, where you're supposed to be looking at what's inherent, what should we be looking at? Do we have to look at both? Look at one? Look at the other? Well, obviously, the Supreme Court has not decided that Rule 807 is invalid. It still exists. And you need to give it to you. It needs to be given effect. And I think to the extent inherent, to the extent that the requirement of sort of an inherent requirement, I think I guess the closest here would be the corroborating bank transactions. I'm not sure that that really is inherent. Let me ask it this way. If we were to say, well, we're going to have to look at circumstantial and inherent guarantees of trustworthiness, what would you point to as inherent about these bank records that would show that they're trustworthy and that we shouldn't be worried about a confrontation clause issue? Well, I mean, one thing I think is important to remember here is that the conduct at issue occurred between, what, 1991 and 1997 or 1998. The trial was in 2011. The defendant was in India for, I think, a 14-year period. So there were difficulties in terms of this was the best evidence that was available. I see that my time has expired. We'll give you another three minutes. And focus on what's inherent. I mean, I understand your point about this is, you know, we really needed this. And I apologize. I don't know why I've got my phone on. Better you than me. You're human, too. That is true. At least it's not Lady Gaga or something. I guess I can be grateful for that. So what's inherent to the document? Many of the documents are responsive to or are directly responsive to communications from Levito. They include sort of they talk about things that Levito has requested them to do. I think that's probably as close as inherent. It's something that the fact is that the bank is acting in response to what is apparently a request from the defendant, from Levito. Aren't those circumstances? They are circumstances. But I think the fact it's inherent. I'm having difficulty, to be perfectly honest, coming up with something that is inherent given what we have to work with here. I was going to say maybe inherently the format where they look like bank documents. But then again, you know, in some – well, I guess in that era they couldn't. Today things like that are easily made up on your own. They looked like letterhead and – But should the court have gone through the documents and parsed out the ones as compared to treating them wholesale? I mean, as your colleague points out, there's post-its, there's handwritten notes. There's a lot of things in there. Well, the court found that some of them that Mr. Levito had adopted by the handwriting on them and that they were therefore admissible as a party opponent. So to the extent that there are some records that were properly admitted for that reason because of the post-its and because of the interlineations and the handwriting notations, to the extent that the court should have done more, it's a trial court. I mean, again, you look at clear error, and I don't believe the defendant has been able to meet that requirement. Thank you. Thank you. Ms. Long? I'll just make a couple of points. I want to start with the restitution issue. The government says that the evidence outside of the recorded conversations themselves that show the existence of a conspiracy is that Mr. Levito submitted the undercover agent's name to Mr. Turner and recommended him for membership. The site that the government has in its brief for support of that proposition is a letter that was sent from Mr. Turner to the undercover agent. But I think it's important. The recorded conversations between Mr. Turner and the undercover agent occurred prior to that letter being sent. When the undercover agent and these recorded conversations are in the government's supplemental appendix, when the undercover agent contacted Mr. Turner, Mr. Turner didn't know who he was. Mr. Turner didn't say as a threshold matter, who's referring you, tell me why you're calling me, where you got your name. That's not what happened. The undercover agent called him. Mr. Turner didn't know who he was. He said, I don't have you in my system. He took down the undercover agent's name and phone number and contact information. The undercover agent did, later in the conversation, volunteer that he had bought his book from Dan Levito. But that wasn't a sort of conditioned precedent to Mr. Turner discussing First American research and the organization with the undercover agent. So I think that's important, that the information that's outside of the recordings themselves have to be viewed in context. The second point I wanted to make was, excuse me, I just lost my train of thought, with respect to the substantive, whether or not this is an offense against property. And the government still only points only to the one case, which, again, if you look at the case at its sites, does not support the proposition that the Ninth Circuit. Is that really accurate, that they just point to that one case? You've just heard Mr. Turner say, and it's in their briefing, that they think this is analogous to bank fraud and that just the way the property taken from the bank is property, the tax revenue they're entitled to is property. That's something they're relying on. What's wrong with that analogy? Because the property that belongs to a bank is property that belongs to a bank that was fraudulently taken from the bank. Here, this is property that was never the U.S. government's. But it's in the hands of the taxpayer if they're not paying it over. And according to the government, rightly and duly owing to the government and withheld wrongly, so in that sense, how is it different from property that the bank holds for somebody else and is taken from the bank? Because it's, again, not property that was actually within the control of the U.S. government at any point. The U.S. government says we have a claim to that money. Does that change this? The question is whether it's, quote, property, unquote, or not for purposes of this particular application of the law. And if money can be property in the bank fraud context, why can't money be property in a tax fraud context? It's not money that's the issue. If you look at a good analogy or a way to look at this might be the general theft statute, 18 U.S.C. 641, which is theft of government property. The bank, if proceeds or something belongs to the U.S. government and then they are taken wrongfully, or the U.S. government pays out money to somebody based upon a fraudulent scheme, that's a property offense. That's something that could be prosecuted under 18 U.S.C. 641. You're saying that uncollected taxes are not property? No, and it's not a property. Well, it's not that it's not property. It's not an offense against property. It's not a conspiracy that has as the object an offense against property. The government could not have- If I choose to defraud the government and get the government to give me money, it's not rightfully mine. Or if the government, I owe the government money and take it as a given that it's owed, it's actually money that I should have given to the government and didn't. In the end, isn't the government out money? Whether it's money I took from them or money I withheld from them, it's theirs. I'm not disputing that the government is out money. It's whether or not this is an offense against property. So what makes the one where I take the money an offense against property and the other where I withhold the money not property? Because the money was never the property of- It doesn't say property taken. And technically, all of these are offenses against an entity. I don't think it's the entity that's the issue. I'm not disputing that the IRS could not be a victim under the restitution act. In the bankruptcy case, the creditors are people who are victims. It's whether or not some amount of unpaid taxes, undetermined amount are the property of the U.S. before, in this case, sort of as an inchoate matter. You would say if it were an offense involving property, it would be broader as compared to an offense against property. Right, and the statute is quite clear. It's an offense against property. Okay, thank you.  Case is well argued. We'll take it under the table.